Transformer Corporation of America, Defendant in Error, v. W. Hinchcliff, Trading as Hinchcliff Motor Service, Plaintiff in Error.

Gen. No. 37,302.

Opinion filed February 13, 1935.

HICKS & FOLONIE, of Chicago, for plaintiff in error.

MICHAEL J. THUMA, of Chicago, for defendant in error; CHESTER D. KERN, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This cause is in this court upon a writ of error directed to the circuit court of Cook county and prosecuted by the defendant from a judgment in the sum of $3,399.10 in favor of the plaintiff entered by the court upon a remittitur of $149.02 by the plaintiff from a verdict of $3,548.12, returned by the jury.

The action is one in assumpsit to recover damage to merchandise consisting of 211 radio sets delivered by the plaintiff to the defendant, and received by the de-

fendant, as a common carrier, for carriage by motor truck from Chicago, Illinois to St. Louis, Missouri, and there to be delivered to the consignee at that point.

An amended declaration was filed, consisting of two counts. The first count alleges, in substance, that on February 21, 1931, the defendant, being a common carrier of goods by motor truck, the plaintiff, at Chicago, Illinois, delivered to the defendant, and the defendant received as a common carrier, 126 Model C-51 and 85 Model C-53 Clarion radios complete with tubes, the property of the plaintiff, of the value of $8,929.25, to be taken care of by the defendant and safely carried to and delivered at St. Louis, Missouri, for the plaintiff; that defendant in consideration thereof, and of a reward in that behalf, promised the plaintiff to take care of the goods and to safely carry the same by motor truck from Chicago to St. Louis, Missouri, and at St. Louis, Missouri safely deliver the goods for the plaintiff, but that the defendant did not take care of the goods, or safely carry or deliver same, but through the negligent and improper conduct of the defendant, and his servants, they were wholly lost to the plaintiff. The second count is substantially the same as the first, except that it alleges 80 of the radios, together with 135 kits of tubes, were wholly lost to the plaintiff, and the residue of the goods greatly damaged.

To the amended declaration the defendant filed a plea of the general issue and a plea that the defendant was not a common carrier.

The evidence is to the effect that the plaintiff delivered to the defendant at Chicago, Illinois, a load of merchandise for carriage by motor truck to St. Louis, Missouri. On February 21, 1931, at Chicago, the defendant signed and delivered to the plaintiff a receipt or bill of lading for the merchandise, consisting of 90 Model C-51 and 60 Model C-53 radios, some of which were sold and consigned to the Famous-Barr

Company, St. Louis, Missouri, and 36 Model C-51 and 25 Model C-53 were consigned to the Electric Lamp and Supply Company, St. Louis, Missouri. These radio sets were crated in boxes when loaded. The motor truck left plaintiff's plant on February 21, 1931, about four o'clock p. m. Thereafter the defendant called the plaintiff on the telephone and advised the company that the radio sets were in a wreck and the defendant was returning them. Two or three days after the shipment, the goods were returned to the plaintiff in Chicago. The radio sets when returned were damaged, water soaked and broken up. The salable radios were sold to the Triangle Electric Company in April 1931, for $4,324.50. The rest were turned over to plaintiff's salvage department and sold for $262.60. It was stipulated the merchandise sold for $7,929.25, and it also appeared in the evidence that plaintiff suffered the loss for which judgment was entered and after plaintiff had entered a remittitur of $149.02.

The defendant's evidence is that the merchandise was received in good condition and not delivered; was returned but not in the same condition as when received by the defendant from the plaintiff; defendant was engaged in the trucking business, and had previously hauled radios for the plaintiff for delivery in Indiana and other States by motor vehicle; and defendant was located in Chicago, Illinois, at Pershing Road and 39th street, where defendant maintained a loading platform and a storage place. Defendant testified:

"In my business I did not have any established or published rates on file with any commission. When anyone called me in regard to hauling a load I found out what kind of a commodity and what price was set on that commodity by the Interstate Commerce Commission, how far distant it had to go, and what was

the risk involved, and based our rate on that, and informed the party of what the shipment would cost, before we even went over to load the merchandise. I did that with the Transformer Corporation.''

No other evidence of the defendant was offered and received, except the three invoices.

The point is made by the defendant that the plaintiff was not the owner of the damaged merchandise and therefore suffered no injury as the result of the damage to the goods while in transit; that the action to recover against the defendant for such damage, if any, is in the consignee, on the ground that the plaintiff's evidence established that the radios were sold to the consignee named in the bill of lading. Therefore plaintiff was without title.

It is not disputed that the defendant, a carrier, after receiving the radios in question never made delivery of the consigned goods; that the goods were damaged while in the possession of the defendant because of a wreck and were returned by the defendant to the plaintiff. This would indicate the defendant considered the goods those of the plaintiff. Defendant was the bailee of the goods, and the contract was made for the purpose of making delivery to the named consignee, but instead the defendant returned the goods to the plaintiff, the bailor.

The right of the plaintiff to maintain this action is based upon the rule announced by the Supreme Court in the case of *Great Western R. Co. of 1859 v. Mc-Comas*, 33 Ill. 185, wherein the court said:

''Here McComas was the bailor of this property, so far as the railroad company was concerned, and if Conrad was the owner, the company should show that it had been restored to him without injury to Mc-Comas. As a general rule, if the bailor is not the owner of the thing bailed, the bailee must, ordinarily, restore it to him. Story on Bailments, sec. 266; *Whit-*

*tier v. Smith,* 11 Mass. 20. The railroad company was the agent of McComas, of whom they received the property, and they are not at liberty to dispute his title in an action brought by him. *Goslin v. Birnie,* 20 Eng. C. L. 153; *Hall v. Griffin,* 25 id. 118; *Harman v. Anderson,* 2 Cowp. 243; *Stonard v. Dunkin et al.,* id. 344. The case of *Freeman v. Birch,* 28 E. C. L. 543, settles the point that either the bailor or bailee may sue. *Davis v. James,* 5 Burrows, 2680, and *Moore v. Wilson,* 1 Term R. 659, are referred to, to support the principle. In *Nichols v. Bastard,* 2 Exch. 659, it was also held that either bailor or bailee might sue, and which ever first obtains damages it is a full satisfaction. Angel on Carriers, sec. 493.

"It is very questionable if the carrier can be permitted, of his own mere motion, to set up, as a defense against his bailor, the right of the real owner, 6 Wharton (Penn.), 418." See also *Edgerton v. Chicago, R. I. & P. Ry. Co.,* 240 Ill. 311.

The defendant is estopped by his acts to question the ownership of the plaintiff. This position of the defendant is not in keeping with his contract, wherein he agreed with the plaintiff to make delivery of the merchandise to the consignee therein named, but instead of delivering he recognized the ownership of the plaintiff after the goods had been damaged by reason of a wreck, and returned the damaged merchandise to the consignor.

The plaintiff's contract with the defendant was not performed by the defendant, and by reason of failure to perform and the consequent damage to the property while in the possession of the defendant, the plaintiff is entitled to recover in this action.

It is also contended by the defendant that the evidence fails to establish that the defendant was a common carrier and received the goods in that capacity. The business carried on by the defendant was that of

hauling goods and merchandise to points not alone in Illinois, but also to points in several surrounding States. The defendant was in business for that purpose, and would haul goods for anyone who required such service.

In fixing rates for the carriage of goods, the defendant takes into consideration the rates determined by the Interstate Commerce Commission for the carriage of a commodity, the kind, the distance and the risk involved, and upon the rates so determined, carries goods by motor truck to the designated place of delivery.

The bill of lading signed by the parties in the instant case, indicates the rates and designation. There is also evidence that the defendant had previously hauled radios for the plaintiff by motor truck for delivery in Indiana and other States.

The defendant's place of business is located in Chicago, Illinois, at Pershing Road and 39th street, where he maintains a loading platform and a storage place. The evidence indicates that the defendant holds out to the general public that he is a common carrier for the purpose of hauling goods and merchandise, for hire, for delivery to designated points, fixed by contract.

The question as to what constitutes a person, firm or corporation as a common carrier has been passed upon by courts of appeal in this State. *Parmelee v. McNulty* (1858), 19 Ill. 556, 558; *Rathbun v. Ocean Accident & Guarantee Corp.*, 299 Ill. 562, 567; *McCusker v. Curtiss Wright Flying Service, Inc.*, 269 Ill. App. 502, 520.

The trend of the several authorities is that a common carrier is one who undertakes, for the public, to transport from place to place such persons or the goods of such as choose to employ him for hire. We believe that the evidence is sufficient, and that the defendant comes within the rule above stated.

Upon the question of damages, the defendant offered no proof whatever that would excuse his failure to deliver the goods to the consignee. The plaintiff received the damaged radios returned by the defendant, that is, all but certain radios not accounted for. No explanation appears in the record as to what caused the damaged condition of these radios. This action is one in assumpsit, and the damage sustained was by reason of failure of the defendant to deliver the goods to the consignee under the terms of defendant's contract. The presumption prevails that where there is no showing by the defendant why the goods were not delivered, but were returned to the plaintiff damaged, there was an absence of reasonable care, and the defendant cannot excuse himself, even by contract. *Adams Express Co. v. Stettaners,* 61 Ill. 184.

Considering the value of the property when delivered to the defendant and the sale of the damaged radios and the salvaged parts at the price received by the plaintiff, we are of the opinion that the evidence was sufficient for the jury to determine the amount of damages sustained by the plaintiff and to return the verdict upon which the judgment was entered after a remittitur in the amount consented to by the plaintiff.

Complaint is made of plaintiff's second instruction, which told the jury that the plaintiff had a right to recover if they found from the evidence that the defendant was guilty of negligence or want of ordinary care, and the loss resulted therefrom, without fault on the part of the plaintiff, and it is argued that this instruction was improper under the pleadings; that the issue of negligence was not in the case.

Having reached the conclusion that the defendant was a common carrier for hire, this instruction was more favorable to the defendant than it would have been under the rule that common carriers are liable as insurers for all injuries or loss not resulting from the

act of God, or of the public enemy. In other words, this instruction places a greater burden upon the plaintiff than was necessary under the facts as established by the evidence in this case, and therefore the instruction was not harmful to the defendant. *Hinchliffe v. Wenig Teaming Co.,* 274 Ill. 417.

In conclusion, there does not seem to be any error in the record which would justify a reversal of the judgment entered by the court. The judgment is therefore affirmed.

*Judgment affirmed.*

WILSON and HALL, JJ., concur.