THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. TERRY S. DUKE, Defendant and Plaintiff-Appellee (Odie Washington, Director of the Department of Corrections, Defendant-Appellant).

Fourth District   Nô. 4—98—0897

Opinion filed May 28, 1999.

James E. Ryan, Attorney General, of Chicago (Joel O. Bertocchi, Solicitor

General, and Marcia L. McCormick, Assistant Attorney General, of counsel), for appellant.

Terry S. Duke, of Danville, appellee *pro se*.

JUSTICE STEIGMANN delivered the opinion of the court:

This case requires us to determine whether a prison inmate serving consecutive sentences for a Class X felony conviction and some other, non-Class X felony is eligible for enhanced good-time credit against that portion of his sentence attributable to the non-Class X conviction (730 ILCS 5/3—6—3(a)(4) (West 1992)). We hold such an inmate is not eligible for enhanced good-time credit against any part of his aggregate sentence.

In April 1996, plaintiff, Terry S. Duke, brought this action *pro se* against defendant, Odie Washington, the Director of the Department of Corrections (Director), seeking to establish his eligibility for enhanced good-time credit pursuant to section 3—6—3(a)(4) of the Unified Code of Corrections (Code) (730 ILCS 5/3—6—3(a)(4) (West 1992)). Duke was serving a 35-year sentence for a 1984 rape conviction, a Class X felony (Ill. Rev. Stat. 1983, ch. 38, par. 11—1), consecutively with a 2¹/₂-year sentence for a 1993 conviction of possession of contraband in a penal institution, a Class 3 felony (720 ILCS 5/31A—1.1(b) (West 1992)). In October 1998, the trial court ordered the Director to consider Duke eligible for enhanced good-time credit against that portion of his sentence attributable to the Class 3 felony conviction. The Director appeals from that order, and we reverse.

## I. BACKGROUND

The following facts are undisputed. In 1984, Duke was convicted of rape and sentenced to 35 years in prison. (Duke was also convicted of attempt (rape), deviate sexual assault, indecent liberties with a child, unlawful restraint, robbery, and aggravated battery, and sentenced on each of these crimes. However, only his 35-year sentence on the rape conviction is pertinent to the issue on appeal). In April 1993, Duke was still serving that sentence in the Pontiac Correctional Center when prison officials found cannabis on his person and in his prison cell. As a result, the State charged Duke with two counts of possession of contraband in a penal institution, a Class 3 felony (720 ILCS 5/31A—1.1(b) (West 1992)). Duke pleaded guilty to both counts, and the trial court sentenced him to 2¹/₂ years in prison on each, to be served concurrently with each other but consecutively to his existing sentence (730 ILCS 5/5—8—4(f) (West 1992)).

In May 1996, Duke filed a grievance with the Department of Corrections (Department), claiming that he had not received enhanced

good-time credit for his participation in prison programs during 1993 and 1994. He contended that even though he could not receive enhanced good-time credit against his Class X sentence, he should be eligible to receive those credits against his Class 3 sentence. The Department denied the grievance, concluding the sentences on Duke's Class X and Class 3 convictions merged into a single period of incarceration and Duke was ineligible to receive enhanced good-time credit against any portion of that incarceration because of his Class X conviction.

In October 1996, Duke filed a *pro se* complaint styled "Petition of *Mandamus*," naming the Director the sole defendant and seeking a declaration that the Director's interpretation of Duke's eligibility for enhanced good-time credit was incorrect. In May 1997, the Director filed a motion to dismiss the complaint, claiming that it was substantially insufficient at law (735 ILCS 5/2—615 (West 1996)) because section 3—6—3(a)(4) of the Code disallowed the allocation of enhanced good-time credit to any person, such as defendant, who was convicted of a Class X felony.

In October 1998, the trial court conducted a hearing on Duke's complaint and the Director's motion, in which Duke acknowledged that the Director had broad discretion to deny Duke enhanced good-time credit even if he were legally eligible for such credit. However, Duke indicated he was not seeking an order requiring the Director to give him enhanced good-time credit. Instead, he sought only a declaration that his previous conviction for a Class X felony did not make him ineligible to receive those credits against that portion of his sentence attributable to the 1993 Class 3 felony conviction.

At the end of the hearing, the trial court entered a written order, which stated, in relevant part, that the Director "shall consider petitioner to be eligible for compensatory good-time credit for participation in [Department] programs notwithstanding the fact that part of his present sentence originally was a Class X offense. Said credit shall only apply to that portion of his sentence represented by his Class [3] conviction ***."

This appeal followed.

## II. ANALYSIS

### A. The "Petition for *Mandamus*"

As an initial matter, the Director points out that the issuance of a writ of *mandamus* is an extraordinary remedy, discretionary in nature, and appropriate only where the party seeking it can establish a clear right to the requested relief, a clear duty of the responding official to act, and clear authority in the responding official to comply with the

writ. *People v. Latona*, 184 Ill. 2d 260, 277, 703 N.E.2d 901, 909-10 (1998). Because Duke conceded during the hearing on his complaint that the Director had broad discretion to grant or deny enhanced good-time credit even to those inmates who were eligible for it, and because Duke's original *pro se* pleading was styled as a petition for *mandamus*, the trial court's order appears at first glance to be a writ of *mandamus* that did not meet the requirements for such relief. However, a more careful examination of the record reveals that not to be the case.

■ Here, even though Duke styled his complaint as a "petition for *mandamus*," no confusion ever existed that Duke was in fact merely seeking an interpretation of the relevant statute to determine his eligibility to receive enhanced good-time credit. The parties and the trial court all treated Duke's "petition for *mandamus*" as if it were a complaint for a declaratory judgment, and we deem such treatment consistent with the liberal construction normally given to *pro se* pleadings. See *Murillo v. Page*, 294 Ill. App. 3d 860, 864, 690 N.E.2d 1033, 1038 (1998) (affording a liberal construction to prisoner's *pro se* civil rights complaint). The order on appeal did not intrude on the Director's discretionary authority but instead was limited in scope to resolving a narrow legal issue of statutory interpretation.

### B. Enhanced Good-Time Credit Eligibility

The Director argues that the trial court erred by ordering him to consider Duke eligible for enhanced good-time credit for participation in Department programs. We agree.

■ Section 3—6—3 of the Code, which governs how the Director awards good-time credit to prison inmates, provides, in relevant part, as follows:

"(a)(1) The Department *** shall prescribe rules and regulations for the early release on account of good conduct of persons committed to the Department ***.

(2) Such rules and regulations shall provide that the prisoner shall receive one day of good conduct credit for each day of service in prison other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court.
***

(4) Such rules and regulations shall also provide that the good conduct credit accumulated and retained under paragraph (2) of subsection (a) of this [s]ection by any inmate during specific periods of time in which such inmate is engaged full-time in educational programs provided by the Department under this paragraph (4) and achieves a goal of improved literacy or has satisfactorily

completed other academic or vocational training programs ***, shall be multiplied by a factor of 1.25. However, *no inmate shall be eligible for the additional good conduct credit under this paragraph (4)[ ] if convicted of *** a Class X felony.*
***

(b) Whenever a person is or has been committed under several convictions, with separate sentences, such sentences shall be construed under [s]ection 5—8—4 [of the Code] in granting and forfeiting of good time." (Emphasis added.) 730 ILCS 5/3—6—3 (West 1992).

Thus, section 3—6—3 provides standard day-for-day good-time credit under subparagraph (a)(2) and, in limited circumstances, enhanced good-time credit under subparagraph (a)(4). However, the enhanced credit is unavailable to prisoners serving Class X felony sentences.

The parties apparently agree that Duke is eligible for the standard day-for-day good-time credit, and Duke concedes that he is ineligible for the enhanced credit against the portion of his sentence attributable to his Class X felony conviction. However, the parties disagree on how the prohibition against awarding enhanced good-time credit to Class X felons applies to an inmate serving consecutive sentences. In our judgment, sections 3—6—3(b) and 5—8—4(e) of the Code, when read in conjunction, resolve this dispute.

█ Section 5—8—4(e) of the Code provides, in relevant part, as follows:

"(e) in determining the manner in which consecutive sentences of imprisonment *** will be served, *the Department *** shall treat the offender as though he had been committed for a single term* with the following incidents:
* * *
(4) *the offender shall be awarded credit against the aggregate* maximum term and the aggregate minimum *term of imprisonment* for all time served in an institution *** at the rate specified in [s]ection 3—6—3 of this Code." (Emphasis added.) 730 ILCS 5/5—8—4(e) (West 1992).

Thus, when read together, sections 3—6—3 and 5—8—4 of the Code form a clear rule that the Department *must* treat consecutive sentences as a "single term" of imprisonment for the purposes of awarding any good-time credit.

We hold that the straightforward application of this rule requires the Director to treat an inmate serving consecutive sentences for a Class X felony and some other, non-Class X felony as ineligible for enhanced good-time credit during the entire "single term" of imprisonment. In other words, the Class X conviction taints any other sentence to be served consecutively with it and precludes eligibility for enhanced

good-time credit against *any* portion of the aggregate term of imprisonment.

Duke's alternative approach would require the Director to violate section 5—8—4 of the Code. If the Director had awarded Duke enhanced good-time credit against that portion of his sentence attributable to the Class 3 felony conviction, then that award would have violated section 5—8—4(e)(4), which requires all credits for good conduct to be made against "the aggregate *** term of imprisonment" rather than some separate portion of that term (730 ILCS 5/5—8—4(e)(4) (West 1992)).

Furthermore, Duke's approach would contravene the purpose behind section 5—8—4(e) of the Code. In *Thomas v. Greer*, 143 Ill. 2d 271, 279, 573 N.E.2d 814, 817 (1991), the supreme court noted that the General Assembly's purpose in enacting section 5—8—4(e) was to simplify the administration of sentences and to provide inmates with a single, comprehensive goal toward their eventual release instead of a series of hurdles to overcome. Duke's proposed interpretation, however, would contravene this purpose by splitting a single, aggregate term of imprisonment into individual pieces, each with separate accumulations of enhanced good-time credit. This approach would require an inmate to overcome a series of separate hurdles before his release and would complicate the Department's administration of sentences by requiring it to keep individual track of each separate sentence comprising a prison term.

We note that our conclusion is consistent with the supreme court's rejection in *Latona*, 184 Ill. 2d at 270-71, 703 N.E.2d at 907, of inmates' claims that they were entitled to credit for their pretrial detentions against each of their consecutive sentences of imprisonment. In rejecting that argument, the supreme court noted that adopting the inmates' view would violate the requirement of section 5—8—4(e)(4) that the Director award credit against only the aggregate term of imprisonment formed by combining the consecutive sentences.

The *Latona* court also pointed out that the purpose of consecutive sentencing is to provide a means to punish some crimes more severely than others. *Latona*, 184 Ill. 2d at 271, 703 N.E.2d at 907. Here, Duke's principal argument in support of the trial court's order is that, by denying him eligibility to enhanced good-time credit, the Director essentially punished him more harshly than other people convicted of Class 3 felonies. Duke is correct, but as the supreme court observed in *Latona*, that is the whole point behind consecutive sentencing.

Accordingly, we conclude that the trial court erred by ordering the Director to consider Duke eligible for enhanced good-time credit for the portion of his consecutive sentence attributable to a Class 3 felony conviction.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's order.

Reversed.

KNECHT, P.J., and McCULLOUGH, J., concur.